NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 18 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TONYA HALE, | No. 22-16274 |
| Plaintiff-Appellant, | D.C. No.<br>2:19-cv-00780-JCM-VCF |
| v. | |
| NV PROPERTY 1, LLC, DBA The Cosmopolitan of Las Vegas; RICHARD SHERMAN; COSMOPOLITAN OF LAS VEGAS, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted February 23, 2024
San Francisco, California

Before: TALLMAN and BENNETT, Circuit Judges, and LASNIK,** District
Judge.
Partial Dissent by Judge BENNETT.

Plaintiff-Appellant Tonya Hale ("Hale")—a Table Games Supervisor at The

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Robert S. Lasnik, United States District Judge for the
Western District of Washington, sitting by designation.

Cosmopolitan of Las Vegas hotel and casino ("the Cosmopolitan")—brought this action against her employer and a casino guest, former professional football player Richard Sherman ("Sherman"), related to two verbal altercations between Hale and Sherman and the Cosmopolitan's actions addressing them. Hale appeals the partial dismissal of her claims for intentional infliction of emotional distress ("IIED") against the Cosmopolitan and Sherman, and the partial entry of summary judgment on her Title VII claims against the Cosmopolitan for hostile work environment and retaliation. As the parties are familiar with the facts, we do not recount them here. We affirm.

1. Hale argues that the district court erred in dismissing her claim for IIED against Sherman. Under Nevada law, to survive a motion to dismiss, Hale was required to allege facts that plausibly showed (1) extreme and outrageous conduct by the defendant; (2) intent to cause emotional distress or reckless disregard as to that probability; (3) severe emotional distress; and (4) actual and proximate causation of the emotional distress. *See Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981); *Jespersen v. Harrah's Operating Co.*, 280 F. Supp. 1189, 1194 (D. Nev. 2002).

Hale based her claim on two separate interactions between Hale and Sherman—the first which lasted "at least 15 to 25 minutes" and the other lasting approximately three to four minutes. Hale alleged that after she told Sherman that

2

he could not exceed the betting limits at his table, Sherman "harassed and repeatedly verbally assaulted Hale, by among other things, yelling and screaming at her, berating her, using profanity towards her and others, making gender discriminatory comments to her and threatening her job." Specifically, Hale alleged Sherman "scream[ed] at [Hale] 'mother f\*\*ker, f\*\*k I'll have your job, you don't tell me what to do,'" and made other such comments as, if "she couldn't take this then they should get someone who could," and that she was "wasting [his] time." Sherman was "trespassed" from the casino on the first occasion by on-duty managers and ordered to leave the premises by casino security.

Though Sherman's conduct as alleged is certainly insulting and perhaps even threatening, "extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998). IIED requires a showing of conduct that "no reasonable person could be expected to endure[]." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993). Interacting with a rude and aggressive individual in a limited capacity is something that persons are necessarily expected to be hardened to. *See Maduike*, 953 P.2d at 26.

Respectfully, our dissenting colleague cites to *Branda v. Sanford*, 637 P.2d 1223 (Nev. 1981), as support for the contrary conclusion that Hale alleged sufficient facts to survive a motion to dismiss with respect to her IIED claim against Sherman.

3

The district court distinguished *Branda* by pointing out that the plaintiff was required to meet Nevada's notice pleading standard, unlike here, where Hale was required to meet the federal pleading standard—which demands "plausibility"—to survive a motion to dismiss. Furthermore, we note that in *Branda*, the plaintiff was a 15-year-old hotel busgirl, and the defendant was a hotel guest that "verbally accosted her with sexual innuendoes and became verbally abusive when she ignored his remarks," including saying "that she was a 'f—k—g bitch,' 'f—k—g c—t,' 'no lady,'" and "[t]his is the one I want. This is her." *Branda*, 637 P.2d at 1224. Unlike in *Branda*, Sherman did not make sexual advances or comments to Hale. *See Shufelt v. Just Brakes Corporation*, 2017 WL 379429 (D. Nev. Jan. 25, 2017) (holding that experiencing unwanted sexual advances and comments can be considered extreme and outrageous). As such, we agree with the district court as to the impact of *Branda* on the immediate case.

We agree with the district court that "Hale [did] not sufficiently allege that Sherman engaged in extreme or outrageous conduct" because "Sherman's conduct is akin to insults, indignities, or threats, not conduct which is outside all possible bounds of decency or utterly intolerable in a civilized community." *See Maduike*, 953 P.2d at 26. We affirm the district court's dismissal of Hale's claim against Sherman for IIED.

2. Hale argues that the district court erred in dismissing her claim for IIED

4

against the Cosmopolitan, where Hale alleged that "Defendant Sherman's actions and Cosmopolitan's actions *by failing to do anything* about Sherman's actions . . . constitutes extreme and outrageous conduct which was intended to cause severe emotional distress to Plaintiff." As to intent, Hale alleged that "Plaintiff feels that if it was a male employee [managers] would have come to that employee's defense."

We also agree with the district court that "Hale provide[d] no factual or legal support for her claim that a supervisor's inaction is considered extreme or outrageous conduct," and that "[e]ven if the court were to determine that [Hale's supervisor]'s failure to intervene is outrageous conduct, Hale [did] not sufficiently allege that [the supervisor] intentionally or recklessly caused Hale's emotional distress."

On appeal and for the first time in this litigation, Hale argues that "[a]s to Cosmopolitan, we should apply a negligence theory of liability to the harassing conduct of Sherman as in [sic] relates to Hale's cause of action against them for intentional infliction of emotional distress." Such an argument presents what is effectively a new theory of liability for negligent infliction of emotional distress that is deemed waived. *See In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000). We affirm the district court's dismissal of Hale's claim against the Cosmopolitan for IIED.

3.   Hale argues that the district court erred in entering summary judgment on her Title VII claim against the Cosmopolitan for hostile work environment. To state

5

a *prima facie* case for hostile work environment due to sexual harassment, an employee must allege (1) they were subjected to unwelcome sexual advances, conduct, or comments; (2) the harassment was based on sex; and (3) the harassment was so severe and pervasive as to alter the conditions of the victim's employment and create an abusive working environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

Hale alleged that she "was harassed because of her sex/gender (female) . . . which created a 'Hostile Environment' in the workplace for [her]," because the Cosmopolitan "allow[ed] Defendant Sherman to harass [her] because of her gender without doing anything about it." Even if Sherman's statements constituted harassment based on sex, such conduct was not "severe or pervasive enough to create an abusive working environment." *Id*. at 67. In determining whether an environment is sufficiently hostile or abusive to violate Title VII, we look "at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001)).

Here, one casino guest's use of profanity directed towards an employee on two isolated occasions does not create a workplace that is "permeated with

6

'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB*, 477 U.S. at 65–66). "'[M]ere utterance of an … epithet which engenders offensive feelings in a employee,' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (internal citations omitted).

The district court properly granted summary judgment to the Cosmopolitan on Hale's Title VII claim for hostile work environment.

4. Hale argues that the district court erred in finding there was no issue of material fact as to her Title VII claim alleging that she "was retaliated against, for reporting Sherman's conduct to Cosmopolitan, filing a charge with NERC and retaining an attorney." To establish a *prima facie* retaliation claim, an employee must show that (1) the employee engaged in a protected activity; (2) the employer took an adverse employment action against the employee; and (3) a causal link existed between the protected activity and the adverse employment action. *Nilsson v. City of Mesa*, 503 F.3d 947, 953–54 (9th Cir. 2007); *see Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Hale failed to show that she suffered any adverse employment action. Hale is still currently employed by the Cosmopolitan, receiving a higher salary than before,

and working table games she prefers. As for her allegations that she suffered adverse employment action related to her Family and Medical Leave ("FML"), Hale was never denied use of her previously approved FML, and further was allowed to take personal leave for the full amount of time off requested to take care of an ailing family member. Furthermore, with regards to the March 2019 request that Hale recertify her FML leave, no Cosmopolitan employee questioned her about FML, but rather, the Cosmopolitan's third-party administrator for absence and leave management, Sun Life, sent Hale correspondence requesting the recertification. Importantly, Hale admitted that she had no reason to believe that Sun Life knew anything about the January and February incidents. As such, to the extent that requiring recertification of her FML a few months before it would have expired can be construed as adverse employment action, Hale failed to show how this action has the necessary causal link to her engagement in the protected activity.

The district court properly granted summary judgment to the Cosmopolitan on Hale's Title VII claim for retaliation.

5. Hale argues that the district court erred as a matter of law in failing to grant Hale leave to amend. When justice requires, a district court should "freely give leave" to amend a complaint. Fed. R. Civ. P. 15(a)(2). But leave to amend "is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

8

The district court order did not explicitly deny leave to amend. Hale did not take any affirmative steps toward amending her complaint or seeking leave to amend. Hale did not amend her complaint as a matter of course, Fed. R. Civ. P. 15(a)(1)(B), Hale did not file a motion seeking leave to amend, and Hale did not seek leave to amend with a proposed amended complaint as required by Local Rule 15-1. The district court did not err as a matter of law in failing to grant Hale leave to amend when she never requested it.

**AFFIRMED.**

*Hale v. NV Property 1, LLC*, No. 22-16274

BENNETT, Circuit Judge, dissenting in part:

Because I believe Hale alleged sufficient facts to survive a motion to dismiss with respect to her claim against Richard Sherman for intentional infliction of emotional distress (IIED), I would reverse the district court's dismissal of this claim. Thus, I respectfully dissent, in part.[1]

In reviewing a motion to dismiss, "we accept all material allegations in the complaint as true and construe them in the light most favorable" to the non-moving party. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). Dismissal is only proper "if the complaint fails to plead enough facts to state a claim to relief that is plausible on its face." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 807 (9th Cir. 2020) (internal quotation marks and citation omitted). Under Nevada law, Hale must allege facts sufficient to show "(1) extreme and outrageous conduct [by Sherman] with either the intention of, or reckless disregard for, causing emotional distress; (2) [Hale] suffered severe or extreme emotional distress and (3) actual or proximate causation." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998) (quoting *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981)).

---

[1] I join the remainder of the majority's disposition.

1

Hale, a supervisor, following casino policy, prevented Sherman from betting over the table limit by giving money to his "entourage" to bet for him. Sherman told Hale if "she couldn't handle this then they should get someone who could." Sherman was "yelling and screaming at [Hale], berating her, using profanity towards her and others, making gender discriminatory comments to her and threatening her job." This alleged abuse lasted *15 to 25 minutes*, after which Sherman left the casino. Then several "customers c[a]me up to [Hale] after the incident and comment[ed] that they were sorry she had to go through what she did and how improper Sherman's conduct was towards her."[2]

Less than a month later, Sherman returned to the casino and allegedly again began harassing and berating Hale. This time, when Hale again denied Sherman's attempt to circumvent casino policy to bet over the table limit, Sherman started "screaming at [Hale] 'mother f**cker, f**k I'll have your job, you don't tell me what to do." Hale reexplained the casino's policy at which point Sherman "replied that Hale was wasting his time, asking her why is she doing this and then screaming out loud 'Tonya is wasting my time.'" Like the first incident, several people "came up to Plaintiff after the incidents" expressing their dismay at how this happened to her.

---

[2] Adding to the alleged distress, no one from the casino staff did anything to stop Sherman, and so, as alleged, the Sherman tirade proceeded for 15-25 minutes. "In addition[,] during the same incident Sherman verbally abused another female employee, [a] Pit Manager . . ."

Hale alleges these incidents caused her severe emotional distress. As claimed in her complaint:

> Sherman's and Cosmopolitan's actions did in fact cause severe emotional distress to Plaintiff, including but not limited to, crying attacks, embarrassment, feeling violated, having nightmares about the incident, being unable to sleep, indignity, humiliation, nervousness, tension, anxiety, recurring nightmares and depression . . . .

As the majority recognizes, Sherman's conduct "is certainly insulting and perhaps even threatening." But contrary to the majority, because of the egregiousness of the lengthy alleged encounters, I would conclude that this conduct *does* rise to the level such that "no reasonable person could be expected to endure it." *Alam v. Reno Holton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993). Sherman is a recognizable public figure who, while in public and in front of many individuals, both customers and coworkers, allegedly twice berated Hale, with one alleged tirade proceeding unabated for 15 to 25 minutes. This is a long time, and none of the cases cited by the majority feature an alleged unabated incident of this length.

In a substantially similar case, the Supreme Court of Nevada held that an IIED claim based on a celebrity's public outburst against a hotel employee should survive dismissal when the complaint claimed the celebrity "screamed at [the employee] causing a number of hotel patrons and employees to watch and listen to the altercation" and called the employee a "f--k--g bitch" and "f--k--g c--t." *Branda v. Sanford*, 637 P.2d 1223, 1224, 1227 (Nev. 1981). The court concluded that

3

allegation sufficiently alleged "[e]xtreme and outrageous conduct," such that "[a] cause of action for intentional infliction of emotional distress was pled." *Id.* at 1227 (quotation marks omitted). Hale's complaint alleges an almost identical, and in fact in some ways more extreme, scenario: Sherman, a celebrity, hurled profanities at Hale two separate times (for 15 to 25 minutes on one occasion—a far longer alleged diatribe than the sufficiently-outrageous conduct in *Branda*) in front of many casino patrons and employees.[3] *See also Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1466 (9th Cir. 1994) ("[W]here there is *public* humiliation it is much more likely that the [IIED] tort action will lie."). We need only look to the alleged immediate aftermath of Sherman's outbursts to see whether society would expect a reasonable person to endure Sherman's insults. On both occasions, members of the public and/or Hale's coworkers came up to her and made comments about how inappropriate Sherman's remarks were, thus further underlining the egregiousness of his conduct.

Because I believe Sherman's alleged prolonged, expletive-ladened, public fit of temper was sufficiently "extreme and outrageous" as recognized by the witnesses

---

[3] The majority accurately points to factual differences between *Branda* and Hale's complaint which might well cause a jury to reject Hale's claim. But these factual differences do not warrant rejecting Hale's complaint on its face.

who saw the events as they unfolded, I would reverse the district court's IIED dismissal and allow Hale's claim against Sherman to proceed.